UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEVEN GOLDRICH,

                                   Plaintiff,

        v.

MASCO CORPORATION,
WATKINS WELLNESS, *and* WELLNESS
MARKETING CORPORATION, *doing
business as* ENDLESS POOLS,

                                   Defendants.

---

No. 22-CV-3769 (KMK)

<u>OPINION &amp; ORDER</u>

Jordan M. Brooks, Esq.
Cuddy &amp; Feder
Mt. Vernon, NY
*Counsel for Plaintiff*

Thomas V. Juneau, Jr., Esq.
Armstrong Teasdale LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Steven Goldrich ("Plaintiff") brings this action against Masco Corporation

("Masco"), Watkins Wellness ("Watkins"), and Wellness Marketing Corporation d/b/a Endless

Pools ("Endless"; collectively, "Defendants"), alleging that a pool designed and manufactured by

Defendants was defective and injured Plaintiff.  Plaintiff's causes of action include strict

products liability, fraudulent concealment, and negligent infliction of emotional distress.  (*See

generally* First Am. Compl. ("FAC") (Dkt. No. 9).)  Before the Court is Defendants' Motion To

Dismiss the FAC (the "Motion").  (*See* Not. of Mot. (Dkt. No. 18).)  For the foregoing reasons,

the Motion is granted.

## I.  Background

### A.  Allegations Appropriately Considered

In support of the instant Motion, Defendants argue throughout their briefing that the Court should consider Plaintiff's original complaint in its ruling, specifically as it relates to the relevant statute of limitations for Plaintiff's claims.  (*See* Defs' Mem. of Law in Supp. of Mot. To Dismiss ("Defs' Mem.") 3–4 (Dkt. No. 19); Defs' Reply Mem. of Law in Supp. of Mot. To Dismiss ("Defs' Reply Mem.") 3–5 (Dkt. No. 22).)  The Court will address this argument at the outset, as it is a threshold question to decide the instant Motion to Dismiss.

An amended complaint "ordinarily supersedes the original, and renders it of no legal effect." *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 68 (2d Cir. 1998) (quotation marks omitted); *see also Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) ("It is well established that an amended complaint . . . supersedes the original and renders it of no legal effect." (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977))); *Pratt v. City of N.Y.*, 929 F. Supp. 2d 314, 319 n.3 (S.D.N.Y. 2013) ("[T]he general rule is that an amended complaint supersedes an original complaint and renders it without legal effect." (citing *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000); and *Harris v. City of N.Y.*, 186 F.3d 243, 249 (2d Cir. 1999))).

"To date, the Court is aware of no ironclad Second Circuit case on how courts must treat successive iterations of pleadings when a plaintiff has removed allegations so as to vitiate a potential affirmative defense—particularly one that has already been foreshadowed via a pre-motion letter." *Roman v. City of Mount Vernon*, No. 21-CV-2214, 2022 WL 2819459, at *4 (S.D.N.Y. July 19, 2022) (emphasis omitted).  "[C]ourts in th[e] [Second Circuit] have taken various approaches to dealing with allegations in an amended complaint that directly contradict

allegations set forth in a prior version of the complaint." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 712 (S.D.N.Y. 2021) (collecting cases) (quoting *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *4 (E.D.N.Y. June 19, 2020)).  In some cases, courts have found that, irrespective of the contradictions, "once an amended pleading is filed, a court may not import information that was contained in the prior pleading but omitted from the amended pleading." *Kilkenny v. L. Off. of Cushner & Garvey, L.L.P.*, No. 08-CV-588, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012) (citing *Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002)); *see also Phillips v. City of Middletown*, No. 17-CV-5307, 2018 WL 4572971, at *4 (S.D.N.Y. Sept. 24, 2018) (noting that an amended complaint omitted allegations in original complaint that undermined excessive force claim, but concluding that "because [the] [p]laintiff has filed the Amended Complaint, the Court will not import information from the original Complaint"); *Xie v. JPMorgan Chase Short-Term Disability Plan*, No. 15-CV-4546, 2016 WL 3963113, at *3 (S.D.N.Y. July 20, 2016) ("Although the change in the Complaint . . . raises doubt, at the motion to dismiss stage the truthfulness of the allegations is assumed, and any attempt to use [the] [p]laintiff's prior pleadings against her as an admission is premature.").

On the other hand, other courts have found that "[w]here a 'plaintiff blatantly changes [the] statement of the facts in order to respond to the defendant[s'] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true.'" *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (alteration in original) (quoting *Wallace v. N.Y.C. Dep't of Corr.*, No. 95-CV-4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)), *aff'd*, 356 F. App'x 535 (2d Cir. 2009) (summary order); *Wheeler v. Slanovec*, No.

16-CV-9065, 2019 WL 2994193, at *6 (S.D.N.Y. July 9, 2019) ("In cases 'where allegations in an amended pleading directly contradict pleadings in the original complaint, courts have disregarded the amended pleading." (quotation marks omitted) (quoting *Brooks v. 1st Precinct Police Dep't*, No. 11-CV-6070, 2014 WL 1875037, at *2 (E.D.N.Y. May 9, 2014))); *see also Kilkenny*, 2012 WL 1638326, at *5 ("There is authority supporting the notion that a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings."); *Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-261, 2011 WL 1655575, at *5 (E.D.N.Y. May 2, 2011) (noting that some courts have held that "a district court has no obligation to accept as true an amended complaint's allegations, if they directly contradict the facts set forth in his original complaint" (citation, alteration, and quotation marks omitted)), *aff'd*, 457 F. App'x 40 (2d Cir. 2012) (summary order); *Wallace*, 1996 WL 586797, at *2 (dismissing pro se amended complaint based on facts "set forth in [the] original complaint" where "[t]he plaintiff blatantly change[d] his statement of the facts in order to respond to the defendants' motion to dismiss").

In Plaintiff's original Complaint, filed on March 25, 2022, Plaintiff alleged a series of "significant problems" that occurred with Plaintiff's Original Endless Pool (the "Pool") beginning in 2015. (*See* Not. of Removal Ex. A ("Compl.") ¶¶ 40–67 (Dkt. No. 1-1).) Specifically, Plaintiff alleges eight separate issues with the Pool between July 2015 and July 2020, (*see id*. ¶¶ 40–48), in addition to two additional issues after July 2020, (*see id*. ¶¶ 49–62). After removing this case to federal court, Defendants submitted a pre-motion letter, previewing that, among several other arguments, "all of Plaintiff's claims which first accrued in 2015 are barred by the applicable statutes of limitation based on Plaintiff's failure to file his Complaint until March 25, 2022." (Letter from Thomas V. Juneau, Esq. to Jordan Brooks, Esq. (May 16,

4

2022) 2 (Dkt. No. 3).)  Specifically, Defendants stated that Plaintiff's "cause of action accrued in 2015 'when the product first injured [P]laintiff,'" thus barring the instant Action.  (*Id*. at 3.)  Shortly thereafter, Plaintiff filed a letter in response stating an intention to amend the pleading while neglecting to detail what deficiencies would be cured in the amended complaint.  (*See* Letter from Jordan Brooks, Esq. to Thomas V. Juneau, Esq. (May 31, 2022) (Dkt. No. 7).)  Plaintiff filed a First Amended Complaint on June 24, 2022.  (*See* FAC.)

The FAC's allegations severely narrowed the alleged defects with the Pool, removing all references to issues with the Pool prior to July 2020, and limiting the issues to two of the ten issues identified in the original Complaint.  (*See* FAC ¶¶ 42–60.)  Defendants argue that, "in an effort to avoid Defendants' dispositive argument that Plaintiff's claims are barred by the applicable statutes of limitation, Plaintiff seeks to mislead the [P]arties and the Court by presenting his claims as not having arisen before July [] 2020."  (Defs' Mem. 3.)  Moreover, Defendants appear to argue that Plaintiff is acting in bad faith, stating that "Plaintiff's purposeful deletion of facts establishing his claims are time barred . . . contradicts the allegations of the original complaint[] and is designed to obfuscate the true facts of this dispute."  (*Id*.)  Plaintiff argues "each of the injuries sustained by [Plaintiff] during the period of 2020-2022 is a new injury as compared [to] those incurred by [Plaintiff] in 2015," and that, "by excluding from the FAC the issues plaguing the Pool during the period of 2015–2019, [Plaintiff] centered the FAC on the injuries that are timely."  (Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl's Mem.") 6 (Dkt. No. 20).)

"[A] prior inconsistent pleading should not trump the Court's obligation under Rule 12(b)(6) to accept a complaint's allegations as true.  Indeed, there are valid reasons why a plaintiff would amend a complaint in a contradictory fashion."  *Palm Beach Strategic Income*,

2011 WL 1655575, at *6.  "It would be a harsh rule of law indeed if a litigant were to change a statement in an amended pleading to repair a weakness cited by an adversary or by the [c]ourt, only to have the case dismissed because the conforming change in some way may conflict with an allegation in the earlier pleadings."  *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 266–67 (S.D.N.Y. 2008); *see also Morris v. City of N.Y.*, No. 20-CV-9314, 2022 WL 2866450, at *1 (S.D.N.Y. July 21, 2022) ("[C]orrective amendments often avoid unnecessary motion practice and amended pleadings may naturally be at odds with original pleadings.").  Here, the "changes between the complaint and amended complaint are, when taken as a whole, not blatant or directly contradictory, and can be described as clarifying but, at most, as inconsistent." *Kermanshah*, 580 F. Supp. 2d at 266 (quotation marks and alterations omitted).

Plaintiff "has not made changes that directly contradict the facts set forth in the original complaint[,]" but instead, Plaintiff's "additions, changes[,] and omissions constitute the kinds of modifications often made by plaintiffs in response to a motion to dismiss."  *Id*.  Plaintiff revised his complaint to place his claims "safely within the statute of limitations," and while this Court "sympathizes with defendants' argument that [Plaintiff] made certain factual changes in the amended complaint expressly to avoid dismissal," the Court will not refer back to Plaintiff's prior Complaint.  *Id*. at 267 (denying a motion to dismiss after a plaintiff amended his complaint to allege fraudulent acts by defendant, after the initial complaint was outside of the statute of limitation); *see also Robles*, 2020 WL 3403191, at *5 (finding that a plaintiff was "not bound by the allegations in his original [c]omplaint" because the amended complaint only "clarif[ied]" the original complaint); *Brooks*, 2014 WL 1875037, at *3 ("Where, however, an amended pleading is not in 'direct' contradiction with the original pleading, courts apply the general rule recognizing that an amended pleading completely replaces the original pleading."); *Bernadotte v.*

6

*N.Y. Hosp. Med. Ctr. of Queens*, No. 13-CV-965, 2014 WL 808013, at *6 (E.D.N.Y. Feb. 28, 2014) (finding that, "[t]aken as a whole, while not congruous, [the] [p]laintiff's allegations are not in such direct contradiction that the [c]ourt is moved to abandon the usual deference afforded to an [a]mended [c]omplaint"). However, "this Court will carefully scrutinize the evidence moving forward, and will not hesitate to impose sanctions under Federal Rule of Civil Procedure 11 or 28 U.S.C. § 1927 if it later appears that the pleadings were inappropriately manipulated to survive defendants' motion." *Kermanshah*, 580 F. Supp. 2d at 267.

### B. Factual Background

The following facts are drawn from the FAC and are assumed to be true for the purposes of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Masco is a Delaware corporation with its principal place of business in Michigan, and is, according to its website, a "global leader in the design, manufacture, and distribution of branded home improvements and building products" with "over 1000 dealers worldwide" and "[seven] global locations." (FAC ¶¶ 10–11.) Watkins is a "wholly owned subsidiary of Masco" with its principal place of business in California. (*Id*. ¶ 12.) As relevant to the instant Action, Watkins manufactures "Endless Pools," an at-home aquatic fitness product that, in addition to "standard pool features, such as pumps, a liner, steps, and a bench," contains a hydraulic motor, which helps produce a current in the pool to create an "in-water treadmill." (*Id*. ¶¶ 13, 21–22.) Endless is a Delaware corporation with its principal place of business in Pennsylvania. (*Id*. ¶ 14.) While Plaintiff does not allege any connection between Watkins and Endless, (*see generally id*.), Plaintiff does allege "upon information and belief" that "Masco directly intervenes in the

management of Watkins [] or Endless, or both" and "through such intervention, Masco was involved with the design or manufacture, or both" of Endless Pools." (*Id*. ¶¶ 15–16.)

Plaintiff is a resident of Westchester County, New York, who purchased the Pool in 2012 for approximately $25,000. (*Id*. ¶¶ 2, 9, 23.) From November 2012 through August 2013, the Pool was installed at Plaintiff's home by an Endless "Factory Trained Installer" ("FTI"). (*Id*. ¶ 25.) Plaintiff alleges that, "[i]n traditional built-in pool sales and installation models, the seller of the pool also typically installs the pool or, at a minimum, is closely involved in the installation." (*Id*. ¶ 26.) However, for Endless pools, "one or more of the Defendants designs and manufactures site-assembled pool components which are sold directly to the consumer as a complete pool package that can be installed using the Endless Pools instruction manuals, videos[,] and Customer Service Helpline." (*Id*. ¶ 28.) For Endless Pools, "[o]ne or more of Defendants' sales/design professionals" is tasked with designing the pool configuration, such as the size of the pool and its accessories, as well as the installation design, or "how the pool interfaces with the environment and site-specific circumstances in which it is installed." (*Id*. ¶¶ 29–31.) Plaintiff alleges that "Defendants' installation design professionals are not involved in the installation process . . . [or] perform any of the site preparation or infrastructure work . . . necessary to install a pool." (*Id*. ¶¶ 33–34.) "Rather, upon completion of the sale[,] the customer's account is transferred from Defendants' sales and design professionals to the Endless customer service department." (*Id*. ¶ 35.) From here, FTIs who received installation training from Endless "are directed by Defendants to install the pool exactly as designed . . . even without Defendants having ever seen the environment into which the pool is installed." (*Id*. ¶¶ 36–37.) Plaintiff alleges that, "[w]ithout involvement of Defendants' design professionals in the

installation process, operational and service problems are sure to arise, because the pool has not been designed for its environment." (*Id*. ¶ 38.)

Plaintiff purchased the Pool to be installed in a newly constructed house extension, fully recessed into the ground. (*Id*. ¶ 39.) Plaintiff alleges that, "[b]ecause of the wholesale absence of any consideration by Defendants of the environment in which the Pool would be installed, the Pool's design did not account for . . . (a) high groundwater conditions, (b) the size of the room, and (c) service access." (*Id*. ¶ 41.) As such, Plaintiff alleges that "since 2020, [Plaintiff] has incurred or will incur costs of approximately $50,000 to try to keep the Pool operational and to stop it from literally collapsing." (*Id*. ¶ 3.) As relevant to the instant Action, Plaintiff recounts two specific periods of time where the Pool needed to undergo significant and costly repairs. (*See id.* ¶¶ 42–60.)

First, in or about July 2020, the Pool suffered an oil leak "caused by, upon information and belief, a defective hydraulic sealant." (*Id*. ¶ 42.) To fix the oil leak, the Pool underwent a "refurb," or "draining the pool, installing new benches, a new liner, [] all of the Pool's hydraulic components . . ., and replumbing underneath the front of the Pool." (*Id*. ¶¶ 43–44.) The refurb cost Plaintiff approximately $16,363.17. (*Id*. ¶ 45.) However, Plaintiff alleges that this type of repair was known to Defendants, alleging that, "[u]pon information and belief, one or more of the Defendants direct their dealers not to inform customers that the pool's motor is likely to fail and the pool likely will need to be rebuilt within a few years of purchase." (*Id*. ¶ 46.) Plaintiff alleges that Defendants did not inform him of this possibility, and Plaintiff and his family were unable to use the Pool for approximately nine months as the Pool underwent the refurb. (*Id*. ¶¶ 47–48.)

Second, "[l]ess than two months after the completion of the refurb, the Pool once again failed because of multiple design defects, precluding its use for months and putting [Plaintiff] at serious risk of severe injury." (*Id.* ¶ 49.)  Specifically, the "autocover brackets" at the front of the Pool became rusty, one bracket collapsed, and the Pool's frame at the front of the Pool failed. (*Id.* ¶ 50.)  As a result, Plaintiff paid a total of $22,400 to cover the repairs, which included labor, customized materials, and other components such as "new channel supports, cover brackets, angle frame, [] perforated stainless steel top covers[,] associated materials[,] and site work." (*Id.* ¶¶ 51–57.)

    C.  Procedural History

On March 25, 2022, Plaintiff filed his Complaint in the Supreme Court of the State of New York, County of Westchester.  (*See* Not. of Removal ¶ 1 (Dkt. No. 1); *see also* Compl.)  Thereafter, on May 9, 2022, Defendants filed a Notice of Removal in this Court.  (*See* Not. of Removal.)  On May 16, 2022, Defendants filed a pre-motion letter in anticipation of filing a motion to dismiss the Complaint.  (*See* Dkt. No. 3.)  After an extension of time, (*see* Dkt. No. 6), Plaintiff responded to Defendants' pre-motion letter indicating that he intended to file an amended complaint, (*see* Dkt. No. 7).  On June 24, 2022, Plaintiff filed the FAC.  (*See* FAC.)

On July 8, 2022, Defendants filed another pre-motion letter in anticipation of filing a motion to dismiss the FAC.  (*See* Dkt. No. 10.)  On July 21 and July 22, 2022, Plaintiff filed two letter responses requesting leave to amend the FAC.  (*See* Dkt. Nos. 13–14.)  Following Defendants' response to Plaintiff's letters, (*see* Dkt. No. 16), the Court set a briefing schedule for Defendants' motion to dismiss the FAC, (*see* Dkt. No. 17).  Pursuant to the briefing schedule, Defendants filed the instant Motion on August 26, 2022.  (*See* Not. of Mot.; Defs' Mem.)  Plaintiff filed his Opposition on September 26, 2022, (*see* Pl's Mem.; Aff. of Jordan Brooks in

Opp. (Dkt. No. 21)), and Defendants filed their Reply on October 17, 2022, (*see* Defs' Reply Mem.).

## II.  Discussion

### A.  Standard of Review

Defendants moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot.)  The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second

alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79. ("Rule 8

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegation contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 95

(citation omitted).  Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district

courts are directed to confine their consideration to "the complaint in its entirety, . . . documents

incorporated into the complaint by reference, and matters of which a court may take judicial

notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also*

*Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

Finally, fraud claims—including common law fraud claims—are subject to the

heightened pleading standard set forth in Rule 9(b).  *See Matana v. Merkin*, 957 F. Supp. 2d 473,

484 (S.D.N.Y. 2013) ("[A] claim for common law fraud under New York law must satisfy the

requirements of the heightened pleading standard under Federal Rule of Civil Procedure 9(b)."

(collecting cases)).  Rule 9(b) provides: "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  However,

courts "'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding

condition of mind for a license to base claims of fraud on speculation and conclusory

allegations,'" rather "'plaintiffs must allege facts that give rise to a strong inference of fraudulent

intent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52, (2d Cir. 1995)).  "An inference is 'strong' if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Pilkington N. Am. Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 492 (S.D.N.Y. 2020) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176–77 (2d Cir. 2015)).

B.  Analysis

Plaintiff brings six causes of action based in New York common law against Defendants for the conduct described above: (1) design defect, (*see* FAC ¶¶ 61–73); (2) manufacturing defect, (*see id*. ¶¶ 74–80); (3) negligence, (*see id*. ¶¶ 81–86); (4) fraudulent concealment, (*see id*. ¶¶ 87–92); (5) failure to warn, (*see id*. ¶¶ 93–99); and (6) negligent infliction of emotional distress, (*see id*. ¶¶ 100–03).  Defendants argue that (1) Plaintiff's first, second, third, fifth, and sixth claims are barred by the relevant statutes of limitations, (*see* Defs' Mem. 2–5);[1] (2)

_____

[1] Given the Court's analysis at the outset of this Opinion, Plaintiff has adequately alleged causes of action within the applicable statutes of limitations.

In diversity actions, "a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998); *see also 2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assurance Co.*, 717 Fed.Appx. 35, 37 & n.1 (2d Cir. 2017) (summary order) ("Federal courts sitting in diversity jurisdiction apply the procedural statute of limitations and choice-of-law rules of the forum state." (citing *Stuart*, 158 F.3d at 627)).  "Because a statute of limitations is an affirmative defense, [a defendant] bears the burden of proof to show . . . the claims [are barred]." *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 230 (2d Cir. 2014) (citations omitted).  Once a defendant is able to make out a prima facie case that the claims are untimely, "[t]he burden then shifts to the plaintiff to establish that the limitations period should be tolled." *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995) (citations omitted).

Under New York law, "an action to recover damages for a personal injury" is subject to a three-year statute of limitations.  CPLR § 214(5); *see also Vuksanovich v. Airbus Americas, Inc.*, 608 F. Supp. 3d 92, 103 (S.D.N.Y. 2022), *appeal dismissed* (Aug. 31, 2022) ("Under New York law, the general limitations period for personal injury claims is three years.").  Similarly, for fraudulent concealment claims that are "incidental" to personal injury claims, they are subject to the same three-year statute of limitations. *Trisvan v. Heyman*, 305 F. Supp. 3d 381, 397–98 (E.D.N.Y. 2018) (finding that a plaintiff's fraud claims are "incidental to his personal injury

Plaintiff's claims against Masco should be dismissed because Plaintiff has not plausibly alleged that the company was involved in the design, manufacture, or distribution of the Pool, (*see id.* at 5–6); (3) Plaintiff's first, second, third, fourth, and fifth causes of action are barred by the economic loss rule, (*see id.* at 6–7); and (4) Plaintiff's fraudulent concealment should be dismissed for failure to plead with sufficient particularly as required by Rule 9(b), (*see id.* at 7–8).  The Court addresses each argument to the extent necessary to decide the instant Motion.

### 1.  Claims Against Masco

Defendants argue that Masco "played no role in the design, manufacture, or distribution" of the Pool, and that Plaintiff's allegations against Masco are "baseless and conclusory," inserted in an effort to avoid a Motion to Dismiss after Defendants' first pre-motion letter.  (Defs' Mem. 5–6.)  Specifically, Defendants argue that Plaintiff "has simply lumped Defendants together in order to attempt to assess liability on the parent company, Masco."  (*Id*. at 6.)

"[U]nder New York law, parent corporations cannot be held liable for the tortious actions of their subsidiaries except where there are facts to support piercing the corporate veil." *Lenkowitz v. InterContinental Hotels Grp. Res. LLC*, No. 20-CV-7759, 2021 WL 2810059, at *3 (S.D.N.Y. July 6, 2021) (citing *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 155 (2d Cir. 2014)).  "In order to sustain a veil-piercing claim under New York law, a plaintiff must establish '(1) the parent corporation dominates the subsidiary in such a way as to make it a 'mere instrumentality' of the parent; (2) the parent company exploits its control to 'commit fraud

---

claims" where the "only meaningful difference between the fraud and other claims is the element of scienter" (collecting cases)).

Here, according to the FAC, Plaintiff alleges injuries sustained starting in July 2020, (*see* FAC ¶¶ 42–60), and filed his initial Complaint on March 25, 2022, (*see* Compl. 1).  As such, Plaintiff appears to have brought this Action within the applicable statute of limitations.

or other wrong'; and (3) the plaintiff suffers an unjust loss or injury as a result of the fraud or

wrong.'" *Id.* (quoting *N.Y. State Elec. & Gas Corp.*, 766 F.3d at 224).

For the first prong of the test, "[a] parent company will not be held liable for the torts of

its subsidiary unless it can be shown that the parent exercises complete dominion and control

over the subsidiary." *Beck v. Consol. Rail Corp.*, 394 F. Supp. 2d 632, 638 (S.D.N.Y. 2005)

(quoting *Montes Serrano v. N.Y. Times Co. Inc.*, 797 N.Y.S.2d 135, 136 (App. Div. 2005)).

"Such dominion and control is not established through a mere showing that one corporation is a

wholly-owned subsidiary of the parent or that the parent owns a controlling interest in the shares

of the subsidiary." *Id.* (citing *Billy v. Consol. Mach. Tool Corp.*, 412 N.E.2d 934, 941 (N.Y.

1980)).  Courts consider a number of factors in deciding whether the parent corporation exercises

sufficient control over its subsidiary, including:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like; (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the amount of business discretion displayed by the allegedly dominated corporation; (7) whether the related corporations deal with the dominated corporation at arms length; (8) whether the corporations are treated as independent profit centers; (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group; and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991).  "If

the plaintiff is able to establish control, he must then further allege that the parent company

exercised this control in order 'to commit a fraud or other wrong that causes plaintiff's loss.'"

*Lenkowitz*, 2021 WL 2810059, at *3 (quoting *N.Y. State Elec. & Gas Corp.*, 766 F.3d at 229)).

Importantly, "it is well established that purely conclusory allegations cannot suffice to state a

claim based on veil-piercing." *Chanel, Inc. v. WGACA, LLC*, No. 18-CV-2253, 2018 WL 4440507, at *5 (S.D.N.Y. Sept. 14, 2018) (citation omitted).

Here, Plaintiff has failed to sufficiently allege *any* facts that would support Masco's involvement under a veil-piercing theory. Throughout the entire FAC, Plaintiff makes three relevant allegations about Masco: (1) Masco is the parent company of Watkins, (*see* FAC ¶ 12); (2) "[u]pon information and belief, Masco directly intervenes in the management of Watkins [] or Endless, or both," (*id*. ¶ 15); and (3) "[u]pon information and belief, through such intervention, Masco was involved with the design or manufacture, or both, of the Pool," (*id*. ¶ 16). Even if the Court takes these purely conclusory allegations as true, Plaintiff alleges almost no facts that would indicate that Masco, as the parent company to Watkins, "exercises complete dominion and control over the subsidiary." *Beck*, 394 F. Supp. 2d at 638.

Plaintiff argues that, by referring to Masco's representation that it is "market[ing] itself as a global leader in the design, manufacture, and distribution of branded home improvements and building products," Plaintiff "should be able to determine Masco's level of intervention in the management of [Watkins or Endless]" through future discovery. (Pl's Opp. 12.) However, a complaint must plausibly show that a Plaintiff is entitled to relief in order to obtain discovery. "[A]s *Iqbal* makes clear, a plausible claim must come *before* discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823, 2012 WL 5278523, at *3 n.4 (S.D.N.Y. Oct. 25, 2012) (citation omitted) (emphasis in original); *see also McBeth v. Porges*, 171 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) (observing that pursuant to *Iqbal's* pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'" (citation omitted)). Thus, Plaintiff "has

failed to meet the demanding standard required to pierce the corporate veil" in his Complaint, and all claims against Masco must be dismissed. *Chanel*, 2018 WL 4440507, at *5.

### 2.  New York Economic Loss Rule

Next, Defendants argue that Plaintiff's strict liability and fraudulent concealment claims "relate[] solely to the damage to the pool purchased by Plaintiff and the repair costs incurred or to be incurred as a result of the claimed damage" and, as such, "are barred in New York based upon the economic loss rule." (Defs' Mem. 6–7.)  Under New York law, "a plaintiff who has suffered economic loss, but not personal or property injury, may not recover in tort if the damages are the type remedial in contract." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (quotation marks, citation, and alterations omitted).  Put differently, "tort recovery in strict products liability and negligence against a manufacturer is not available to a downstream purchaser where the claimed losses flow from damage to the property that is the subject of the contract, and personal injury is not alleged or at issue." *N.Y. Methodist Hosp. v. Carrier Corp.*, 892 N.Y.S.2d 110, 111 (App. Div. 2009) (citation omitted); *see also Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 16 (2d Cir. 2000) ("[C]ourts have applied the economic loss rule to prevent the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort.").  Here, Defendants argue that Plaintiff solely seeks recovery for "the amounts paid to repair or refurbish the [] Pool[] purchased in 2012," thus barring recovery under the economic loss rule.  (Defs' Mem. 7; *see also* FAC ¶¶ 58–60.)  The Court agrees.

For each of Plaintiff's strict liability causes of action, Plaintiff solely seeks damages "to remedy the myriad defects associated with and caused by the Pool."  (FAC ¶ 58; *see also id.* ¶¶ 61–86, 93–99.)  These damages clearly "flow from damage to the property that is the subject of

the contract." *N.Y. Methodist Hosp.*, 892 N.Y.S.2d at 111 (citation omitted).  While Plaintiff is

correct that the economic loss rule does not apply to fraudulent concealment, (*see* Pl's Opp. 8–9),

the remainder of Plaintiff's arguments with respect to the strict liability claims are unavailing.

*See In re General Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 431–433 (denying a

motion to dismiss on a fraudulent concealment claim because "New York courts have long

routinely permitted fraud claims for pure economic loss to proceed" (quotation marks and

citations omitted)).  Plaintiff argues that "the economic loss rule does not apply to damage to

'other property that was not part of the parties' agreement[,]'" and that this exclusion from the

economic loss rule "applies to the costly plumbing work and replacement of tiles that [Plaintiff]

was required to have performed because of the defective Pool."  (Pl's Opp. 8 (quoting *126*

*Newton St., LLC v. Allbrand Commercial Windows & Doors*, 993 N.Y.S.2d 558, 561 (App. Div.

2014)).)  To be sure, damages to "'other property' that was not the subject of the parties'

agreement[—namely damages to Plaintiff's property such as the tiles or the plumbing—] . . .

support a valid tort cause of action."  *126 Newton St. LLC*, 993 N.Y.S.2d at 561.  However,

Plaintiff did not allege *any* of these categories of damages to his property in the FAC, outside of

a passing, conclusory reference to "work performed around the Pool," which is not even specific

enough for the Court to infer that this relates to damage of Plaintiff's home.  (FAC ¶ 7.)

Accordingly, "Plaintiff[] seek[s] damages for [his] economic losses, but [he] do[es] not

claim that [he] suffered any personal injury or injury to property as a result of Defendants'

conduct.  [Plaintiff's] negligence and strict products liability claims therefore fail."  *Horn v.*

*Medical Marijuana, Inc.*, 383 F. Supp. 3d 114, 134 (W.D.N.Y. 2019).

### 3.  Fraudulent Concealment

Next, Defendants argue that "Plaintiff has failed to satisfy his heightened burden of pleading fraud under Rule 9(b)" because he "generically lumps all Defendants together for purposes of his allegations rather than stating what Defendant, if any, knew, when it knew, when it failed to disclose it to Plaintiff, why it failed to do so, and who it further directed to hide information from Plaintiff."  (Defs' Mem. 7–8.)  "Under New York law, a claim for fraudulent concealment requires a plaintiff to establish '(1) that the defendant had a duty to disclose certain material information but failed to do so; (2) that the defendant then made a material misrepresentation of fact; (3) that said misrepresentation was made intentionally in order to defraud or mislead; (4) that the plaintiff reasonably relied on said misrepresentation; and (5) that the plaintiff suffered damage as a result.'"  *Clark v. N.Y.C. Housing Authority*, No. 20-CV-251, 2022 WL 4229386, at \*7 (S.D.N.Y. Sept. 14, 2022) (quoting *Oxbow Calcining USA Inc. v. Am. Indus. Partners*, 948 N.Y.S.2d 24, 30 (App. Div. 2012)).

Here, Plaintiff has failed to plead his fraud claim with particularity.  As explained by the Second Circuit, Rule 9(b) requires a Plaintiff to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (citation omitted).  Plainly, Plaintiff has failed to satisfy two of four critical requirements of the requisite heightened pleading: identifying the speaker and stating where and when the omissions occurred.  Instead, Plaintiff alleges "[u]pon information and belief, one or more of the Defendants direct their dealers not to inform customers that the pool's motor is likely to fail and the pool likely will need to be rebuilt within a few years of purchase."

(FAC ¶ 46; *see also id*. ¶ 88 (stating that "Defendants omitted, and upon information and belief directed their authorized dealers to omit[] the material facts" that the pool will likely fail and is not suitable for an indoor environment); *id*. ¶ 89 ("Upon information and belief, Defendants had an intent to defraud [Plaintiff] to induce him to purchase the Pool).)

First, Plaintiff fails to identify which Defendant, or which combination of Defendants allegedly committed the omission.  (*See generally id*.)  *See also In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 213 (S.D.N.Y. 2019) ("Generally, sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b)." (quotation marks omitted) (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579–80 (2d. Cir. 2005)).  Second, while Plaintiff is not required to provide exact dates related to the alleged fraudulent omission, Plaintiff does not plead with any particularity *at all* when and where this omission occurred.  *See Haraden Motorcar Corp. v. Bonarrigo*, No. 19-CV-1079, 2020 WL 1915125, at *7 (N.D.N.Y. Apr. 20, 2020) ("While [the plaintiff] does not provide specific dates for the fraudulent acts, to satisfy Rule 9(b), 'a plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based.'" (quoting *Manavazian v. Atec Grp. Inc.*, 160 F. Supp. 2d 468, 477 (E.D.N.Y. 2001)).  Third and importantly, "[a]s a general matter, 'Rule 9(b) pleadings cannot be based upon information and belief.'"  *Paul Hobbs Imports Inc. v. Verity Wines LLC*, No. 21-CV-10597, 2023 WL 374120, at *7 (S.D.N.Y. Jan. 24, 2023) (*quoting DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).  "While there is an exception that allows fraud to be alleged upon information and belief 'as to facts peculiarly within the opposing party's knowledge,' a category that plausibly could encompass [Defendants' alleged fraudulent omissions], such allegations 'must be accompanied

20

by a statement of the facts upon which the belief is based.'"  *Id*. (quoting *DiVittorio*, 822 F.2d at 1247).

Plaintiff's "generalized and conclusory allegations of fraudulent concealment do not satisfy the requirements of Fed. R. Civ. P. 9(b)."  *Armstrong v. McAlpin*, 699 F.2d 79, 88–89 (2d Cir. 1983) (collecting cases).   Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's fraudulent concealment claim.

### 4.  Negligent Infliction of Emotional Distress

Finally, Plaintiff alleges a final cause of action, alleging that Defendants negligently inflicted emotional distress on Plaintiff after breaching their "duty to provide a safe, non-hazardous, and functional Pool."  (FAC ¶ 101.)  "To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm."  *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021) (en banc) (collecting cases).  "As fleshed out by New York caselaw, the latter element—guarantees of genuineness—generally requires a specific, recognized type of negligence that obviously has the propensity to cause extreme emotional distress, 'such as the mishandling of a corpse or the transmission of false information that a parent or child had died.'"  *J.H. v. Bratton*, 248 F. Supp. 3d 401, 416 (E.D.N.Y. 2017) (quoting *Taggart v. Costabile*, 14 N.Y.S.3d 388, 396 (App. Div. 2015)).  "Otherwise, the 'guarantees of genuineness' element 'generally requires that the breach of the duty owed directly to the injured party must have at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety.'"  *Id*. (citation omitted);  *see also Francis*, 992 F.3d at 81 n.57 ("To establish the fourth element, the plaintiff generally

must plead that the breach endangered his physical safety or caused him to fear for his physical safety."); *Carabello v. N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 646 (E.D.N.Y. 2013) ("[T]o succeed on a claim based on an injury of purely emotional harm, a plaintiff must premise her cause of action 'upon a breach of duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety.'" (quoting *Romero v. City of New York*, 839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012))); *Fisk v. Letterman*, 424 F. Supp. 2d 670, 676 (S.D.N.Y. 2006) ("In order to state a claim for negligent infliction of emotional distress, a plaintiff must allege that she was owed a duty, that the defendant breached the duty, and that the plaintiff suffered emotional injury as a result.  In addition, the defendant's conduct must have unreasonably endangered the plaintiff's physical safety." (citing *Green v. Leibowitz*, 500 N.Y.S.2d 146, 148 (App. Div. 1986))).

A negligent infliction of emotional distress claim cannot be asserted if it is "essentially duplicative of tort or contract causes of action." *Djangmah v. Falcione*, No. 08-CV-4027, 2013 WL 208914, *9 (S.D.N.Y. Jan. 18, 2013) (quoting *Wolkstein v. Morgenstern*, 713 N.Y.S.2d 171, 172 (App. Div. 2000)), *report and recommendation adopted,* 2013 WL 1195261 (S.D.N.Y. Mar. 25, 2013); *Moore v. City of N.Y.*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) ("The New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available." (citing *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.Y. 1978))).  "The rationale for this rule is grounded in the underlying purpose of the common law tort of negligent infliction of emotional distress which 'has its roots in the acknowledgment by the courts of the need to provide relief in those circumstances where traditional theories of recovery do not.'" *Virgil v. Darlak*, No. 10-CV-6479, 2013 WL 4015368, at *10 (W.D.N.Y. Aug. 6, 2013) (emphasis omitted) (quoting *Lee v. McCue*, 410 F. Supp. 2d 221, 226-27

(S.D.N.Y. 2006), *aff'd*, 218 F. App'x 26 (2007) (summary order)).  In this case, the only two allegations supporting negligent infliction of emotional distress clearly track the allegations supporting Plaintiff's strict products liability and fraudulent concealment claims: they concern whether Defendants breached their duty to Plaintiff in installing the Pool.  (*See* FAC ¶¶ 102–03.)

Accordingly, Plaintiff's negligent infliction of emotional distress claim is dismissed.  *See Doe v. Uber Technologies, Inc.*, 551 F. Supp. 3d 341, 363–65 (S.D.N.Y. 2021) (dismissing a negligent infliction of emotional distress claims as duplicative); *Poulos v. City of N.Y.*, No. 14-CV-3023, 2015 WL 5707496, at *10 (S.D.N.Y. Sept. 29, 2015) (dismissing negligent infliction of emotional distress claim that was "based on the same conduct that constitutes the basis for Plaintiff's state law claims for harassment, intimidation, assault and battery, failure to protect, neglect and failure to provide medical treatment, and negligence"); *C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 327–28 (E.D.N.Y. 2016) (dismissing negligent infliction of emotional distress claim because the plaintiff's arguments mirrored her claim for negligent supervision); *Richardson v. City of N.Y.*, No. 15-CV-543, 2015 WL 7752143, at *19 (S.D.N.Y. Nov. 18, 2015) (dismissing negligent infliction of emotional distress claim based "on the same conduct giving rise to his state law claims for negligence and medical malpractice"), *report and recommendation adopted*, 2016 WL 1637997 (S.D.N.Y. Apr. 22, 2016).

## III. Conclusion

For the foregoing reasons, Defendant's Motion is granted.  Defendants have requested that, should the Court grant their motion, this Court should not grant Plaintiff leave to file a Second Amended Complaint.  (*See* Defs' Reply 9–11.)  However, leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d

98, 105 (2d Cir. 2018) (quotation marks omitted).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Because this is the first adjudication of Plaintiff's claims on the merits, the Court will deem this dismissal as without prejudice.  To the extent Plaintiff has a good faith basis for filing an amended complaint, he must do so within 30 days of the date of this Opinion & Order.  If Plaintiff fails to abide by the 30-day deadline, this Action may be dismissed with prejudice.  However, Plaintiff is on notice that the Court will not grant any additional requests to amend the Complaint absent an extraordinary showing, given Plaintiff's ample opportunities to amend his pleadings based on Defendants' pre-motion letters and this Court's Opinion.

The Clerk of Court is respectfully directed to terminate the pending motion, (Dkt. No. 18).

SO ORDERED.

Dated:    March 27, 2023
          White Plains, New York

_____
        KENNETH M. KARAS
       United States District Judge

24